Keith M. Aurzada (TX Bar No. 24009880)
Michael P. Cooley (TX Bar No. 24034388)
Jay L. Krystinik (TX Bar No. 24041279)
BRYAN CAVE LEIGHTON PAISNER LLP
2200 Ross Avenue, Suite 3300
Dallas, Texas 75201
Telephone: (214) 721-8000
Facsimile:  (214) 721-8100
Email: keith.aurzada@bclplaw.com
Email: michael.cooley@bclplaw.com
Email: jay.krystinik@bclplaw.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § § § | Case No. 19-31006-sgj11 |
| Atlas Stone Distribution, Inc., | § § | Chapter 11 |
| Debtor. | § § | |

**OBJECTION TO
DEBTOR'S MOTION FOR USE OF CASH COLLATERAL**

UMB Bank, N. A. ("*Secured Lender*") hereby files this objection to the *Debtor's Motion for Use of Cash Collateral* [Docket No. 9] (the "*Motion*") and respectfully states as follows:

**I.
PRELIMINARY STATEMENT**

1. On March 28, 2019, during the first interim hearing on the Motion, Secured Lender advised the Court that Secured Lender had experienced repeated difficulties obtaining basic information from the Debtor, but hoped that communication would improve pospetition. Unfortunately, it has not.

2. In addition to the protections contained in the Court's *Interim Order for Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code and Providing Adequate Protection and Granting Liens and Security Interests* [Docket No. 21] (the "*First Interim Order*"),

Secured Lender requests that any further order of the Court authorizing interim usage of cash collateral:

1) require the Debtor to immediately produce the financial information Secured Lender has requested but not obtained;

2) order the Debtor to provide to Secured Lender each month the monthly bank statements for each debtor-in-possession account as soon as such statements become available and, within three (3) business days after receipt of any written request, promptly provide to the Secured Lender all financial information reasonably requested by the Secured Lender or its counsel;

3) order the Debtor to timely comply with the non-monetary provisions of its Loan Documents with Secured Lender (such as provision regarding Borrowing Base Reports); and

4) order the Debtor to allow Secured Lender to conduct a field audit of Secured Lender's collateral, with such field audit to commence on April 8, 2019 at 9:00 a.m. at the Debtor's facility in Carrolton, Texas, and during the week of April 15, 2019 at the Debtor's facilities in St. Louis, Missouri and Chicago, Illinois.

## II.
## OBJECTION

**A.  Loan Documents and Debtor's Defaults.**

3. Secured Lender and Debtor are parties to a Loan and Security Agreement dated August 1, 2017 (the "***Original Loan Agreement***"), as amended by a First Amendment and Forbearance Agreement dated July 31, 2018 (the "***First Amendment***"), and as amended by a Second Amendment to Loan Documents effective October 30, 2018 (the "***Second Amendment***", and together with the Original Loan Agreement and the First Amendment, the "***Loan Agreement***").

4. In connection with the Loan Agreement, Debtor has delivered to Secured Lender a Promissory Note in the maximum principal amount of $8,000,000 dated August 1, 2017 (as amended from time to time, the

"*Note*"). The Note is fully drawn and the unpaid principal balance due thereunder is $8,000,000.

5. Debtor has also entered into one or more credit card agreements with Secured Lender, pursuant to which Secured Lender has provided a credit card facility to Debtor with a limit of up to $200,000 (the "*Credit Card Agreement*").

6. Pursuant to the Loan Agreement, the Loan was secured by the following (collectively, the "*Collateral*"):

> All goods, accounts, equipment, inventory, contract rights or rights to payment of money, leases, license agreements, franchise agreements, general intangibles, commercial tort claims, documents, instruments (including any promissory notes), chattel paper (whether tangible or electronic), cash, deposit accounts, fixtures, letters of credit rights (whether or not the letter of credit is evidenced by a writing), securities, and all other investment property, supporting obligations, and financial assets, whether now owned or hereafter acquired, wherever located; and all [Debtor's] books relating to the foregoing, and any and all claims, rights and interests in any of the above and all substitutions for, additions, attachments, accessories, accessions and improvements to and replacements, products, proceeds and insurance proceeds of any or all of the foregoing.

7. Secured Lender perfected its security interest in the Collateral through the filing of UCC-1 financing statements in Illinois, the state of the Debtor's incorporation.

8. The foregoing documents and the transactions evidenced thereby collectively constitute the "*Credit Facility*". The Loan Agreement, Note, and Credit Card Agreement, together with all other documents, contracts and agreements relating to the Credit Facility or to any loan constituting a part thereof are collectively the "*Loan Documents*" and each is a "*Loan Document*."

9. Prepetition, Debtor defaulted under the Loan Documents as a result of, without limitation, failing to disclose pending or threatened

litigation against Debtor. Moreover, Section 6.2 of the Loan Agreement permits Secured Lender to perform or have its agent perform audits of Debtor's books, records, inventory and any other matters Secured Lender deems necessary in its reasonable discretion (a "**_Field Audit_**"). Prepetition, the Debtor refused to allow Secured Lender to conduct a Field Audit.

**B.     Postpetition, the Debtor has continued to refuse to supply Secured Lender with requested information.**

10.     Postpetition, Secured Lender had planned to commence a Field Audit on March 25, 2019. On March 24, 2019, Debtor, through its counsel, advised Secured Lender that the Field Audit could not commence as planned but might be able to proceed later in the week.

11.     On March 26, 2019, Secured Lender and its counsel met with Debtor and its counsel. At that meeting, the Debtor promised to provide Secured Lender with basic financial information by Friday, March 29, 2019, including an inventory report, accounts receivable aging report, and accounts payable aging report. The Debtor understood that Secured Lender needed such information before conducting a Field Audit. As of the filing of this Objection, none of the requested information has been provided.

12.     The First Interim Order provides as follows:

> 13. The Debtor shall, within five (5) business days after receipt of any written request, promptly provide to the Secured Lender all other financial information reasonably requested by the Secured Lender or its counsel, and all information that is required to be provided by the Debtor to the Secured Lender under the Loan Documents.

First Interim Order, at ¶ 13.

13.     On March 28, 2019, Secured Lender requested in writing that the Debtor provide the following information to Secured Lender:

> 1. Updated Inventory Report broken down by each of the Debtor's three locations;
>
> 2. Updated Accounts Receivable Aging Report;

12594864                                4

       3. Updated Accounts Payable Aging Report;

       4. Interim Profit and Loss statement for the first quarter of 2019 (or at least for January & February); and

       5. Updated Balance Sheet.

*See* **Exhibit A**.

14. Under the terms of the First Interim Order, the requested information must be provided by April 4, 2019. As of the filing of this Objection, none of the requested information has been provided.

15. Finally, Section 6.1 of the Loan Agreement requires that the Debtor shall deliver to Secured Lender, within thirty (30) days after the last day of each month, (i) aged listings of accounts receivable and accounts payable (by invoice date), (ii) perpetual inventory reports for the Inventory (as defined in the Loan Agreement) valued on a first-in, first-out basis of the lower cost of market (in accordance with GAAP) or such inventory reports as are requested by Lender (collectively, the "***Borrowing Base Reports***"). Section 6.1 of the Loan Agreement also requires that the Borrower Base Reports be accompanied by a "***Compliance Certificate***" (as defined therein) signed by an officer of the Debtor.

16. While the Debtor provided reports for January 2019, such reports were inaccurate. The Debtor agreed to supply corrected reports but failed to do so. Borrowing Base Reports for February 2019 are now also past due.

17. Following the March 28, 2019 request, the Debtor also indicated its intent to provide Secured Lender with a 13-week budget before the next hearing. As of the filing of this Objection, no budget has been provided.

### C. Secured Lender is entitled to additional protections in any further interim cash collateral order.

18. In addition to the protections contained in the Court's First Interim Order, the Secured Lender is entitled to additional, reasonable protections as follows.

19. Pursuant to the terms of the First Interim Order, the financial information requested on March 28, 2019 must be provided by April 4, 2019. Secured Lender requests that the Court specifically order the production of the information requested on March 28, 2019, with such production to occur no later than 5:00 p.m. CDT on April 4, 2019. The failure to timely provide such information should constitute an immediate Event of Default under any further order.

20. Paragraph 13 of the First Interim Order should be revised to require the Debtor to provide all financial information reasonably requested by the Secured Lender or its counsel to Secured Lender within three business days after receipt of any written request (as opposed to five business days). Given the history of nonresponsiveness to information requests, the Debtor should not be afforded such latitude going forward. In addition, the Court should order that the Debtor shall provide to Secured Lender each month the monthly bank statements for each debtor-in-possession account as soon as such statements become available.

21. The Court should order the Debtor to timely comply with the non-monetary provisions of its Loan Documents with Secured Lender, such as (without limitation) the requirement to timely provide Borrowing Base Reports.

22. The Court should order the Debtor to allow Secured Lender to conduct a field audit of Secured Lender's collateral, with such field audit to commence on April 8, 2019 at 9:00 a.m. at the Debtor's facility in Carrolton, Texas, and continue during the week of April 15, 2019 at the Debtor's facilities in St. Louis, Missouri and Chicago, Illinois. The failure to timely allow such Field Audit should constitute an immediate Event of Default under any further order.

23. Finally, based on a 360-day year (which the Note specifies for calculation of interest), the per diem interest under the Note, at the non-default rate, is $1,322.22 (5.95% x $8,000,000 / 360). Secured Lender therefore requests that future Adequate Protection Payments referenced in Paragraph 7 of the First Interim Order be based on the actual per diem amount of interest due under the Note. If a final order is entered, it should provide for monthly payments of interest due on the first day of each month.

**WHEREFORE**, Secured Lender respectfully requests that the Court condition any further interim cash collateral order as requested herein.

Dated: April 3, 2019
Dallas, Texas

Respectfully submitted,

**Bryan Cave Leighton Paisner LLP**

By: */s/ Jay L. Krystinik*
Keith M. Aurzada (TX Bar No. 24009880)
Michael P. Cooley (TX Bar No. 24034388)
Jay L. Krystinik (TX Bar No. 24041279)
JP Morgan Chase Tower
2200 Ross Avenue, Suite 3300
Dallas, Texas 75201
T: 214.721.8000
F: 214.721.8100
keith.aurzada@bclplaw.com
michael.cooley@bclplaw.com
jay.krystinik@bclplaw.com

*Counsel for UMB Bank, N. A.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2019, a copy of the foregoing was served via the Court's EM/ECF electronic system to all parties consenting to service through same, including to the Debtor's counsel.

*/s/ Jay L. Krystinik*
Jay L. Krystinik